IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MATTHEW KALEBAUGH,

    Plaintiff,

v.        Case No. 2:14-CV-2238-JTM-GLR

COHEN, McNEILE & PAPPAS, P.C.,

    Defendant.

**MEMORANDUM AND ORDER**

Plaintiff Matthew Kalebaugh seeks damages against defendant Cohen, McNeile & Pappas, P.C. ("defendant") for alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and the Kansas Consumer Protection Act ("KCPA"), K.S.A. § 50-623 *et seq*. This matter is before the court on defendant's Motion to Dismiss (Dkt. 6). For the reasons stated below, defendant's motion is granted in part and denied in part.

**I.**    **Factual and Procedural Background**

This case arises out of defendant's attempt to collect a credit card debt allegedly owed by plaintiff to Discover Bank. On June 7, 2013, defendant mailed plaintiff a debt collection letter which read, in pertinent part, as follows:

> This is to notify you that Discover Bank has retained this firm to collect its claim against you for the balance owing on your Discover Card account. We are hereby making demand upon you to contact us for payment of this debt. If you are on active duty in the military, please provide us with written documentation to that effect.
>
> This communication is from a debt collector **and is** an attempt to collect a debt. Any information obtained will be used for that purpose. Unless you notify us within thirty (30) days after receipt of this letter that the validity of this debt, or

any portion of it, is disputed, we will assume that the debt is valid. If you do notify us of a dispute, we will obtain verification of the debt and mail it to you. Further, upon your written request within thirty (30) days, we will provide you with the name and address of the original creditor if different from the current creditor. **We may proceed with suit against you without waiting the 30 days if so requested by our client.**

Dkt. 1-1, at 9 (emphasis in original).

Plaintiff filed suit against defendant in the District Court of Wyandotte County, Kansas, on May 1, 2014, case number 14LM2209, for alleged violations of the FDCPA and the KCPA (Dkt. 1-1). On May 22, 2014, defendant removed this case to the United States District Court for the District of Kansas (Dkt. 1).[1] On June 20, 2014, defendant filed a Motion to Dismiss plaintiff's claims in their entirety (Dkt. 6).

## II.     Legal Standard

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Upon such motion, the court must decide "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009). A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct. *Iqbal*, 566 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of the claims as well as the grounds upon which each claim rests. *See Robbins v. Okla.*, 519 F.3d 1242, 1248 (10th Cir. 2008) (internal citations omitted); *see also* FED. R. CIV. P. 8(a)(2) ("A pleading that states a claim for relief must contain a short and plain statement of the claim

---

[1] Defendant filed an Amended Notice of Removal on May 30, 2014, to correct certain dates (Dkt. 4).

showing that the pleader is entitled to relief."). Under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint, but need not afford such a presumption to legal conclusions. *Iqbal*, 556 U.S. at 678-79. Viewing the complaint in this manner, the court must decide whether the plaintiff's allegations give rise to more than speculative possibilities. *See id.* at 678. ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570).

### III.   Discussion

**A.  FDCPA Violation**

The FDCPA, designed in part to "eliminate abusive debt collection practices by debt collectors," "establishes certain rights for consumers whose debts are placed in the hands of professional debt collectors for collection, and requires that such debt collectors advise the consumers whose debts they seek to collect of specified rights." 15 U.S.C. § 1692(e); *Kalebaugh v. Berman & Rabin, P.A.*, 2014 U.S. Dist. LEXIS 119807, at *7-8 (D. Kan. Aug. 28, 2014) (quoting *DeSantis v. Computer Credit, Inc.* 269 F.3d 159, 161 (2d Cir. 2001)). The Act "generally prohibits debt collectors from engaging in harassing and abusive conduct; using false, deceptive, and misleading representations; and using unfair or unconscionable means to collect debts." *Martin v. Kan. Counselors, Inc.*, 2014 U.S. Dist. LEXIS 66199, at *15-16 (D. Kan. May 13, 2014) (citing *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002)).

In Count I of his Complaint, plaintiff alleges that the collection letter sent by defendant violates the FDCPA, namely § 1692g, because it contradicts and/or overshadows the validation

rights notice required by the Act. Specifically, plaintiff takes issue with the last sentence of the letter, which states, "[w]e may proceed with suit against you without waiting the 30 days if so requested by our client." Dkt. 1-1, at 9.

**1. Matter of Law**

The Tenth Circuit has never directly addressed whether the contradiction/overshadowing question is one of law that may be addressed in a motion to dismiss, or fact that is reserved for the jury. However, the majority of circuits that have ruled on the issue view it as a question of law. *See, e.g., Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 508 n.2 (6th Cir. 2007); *Wilson v. Quadramed Corp.*, 225 F.3d 350, 353 n.2 (3d Cir. 2000); *Terran v. Kaplan*, 109 F.3d 1428, 1432-33 (9th Cir. 1997); *Garcia-Contreras v. Brock & Scott, PLLC*, 775 F. Supp. 2d 808, 817 (M.D.N.C. 2011); *see also Owens v. Hellmuth & Johnson, PLLC*, 550 F. Supp. 2d 1060, 1065 (D. Minn. 2008); *In re Martinez*, 266 B.R. 523, 533 (Bankr. S.D. Fla. 2001).[2] At least one court in the District of Kansas has previously determined that the issue of whether collection letters satisfy the requirements of § 1692g is a question of law that may be resolved on summary judgment. *Rachoza v. Gallas & Schultz*, 1998 U.S. Dist. LEXIS 5018, at *11 (D. Kan. Mar. 23, 1998) (citing *Terran*, 109 F.3d at 1432). Indeed, in a recent decision by Judge Crabtree, (which involves, interestingly enough, the same plaintiff now before this court), the court held that its "best judgment is that the Tenth Circuit would agree with the majority view and hold that the Court should decide as a matter of law . . . ." the contradiction/overshadowing question under § 1692g. *Kalebaugh*, 2014 U.S. Dist. LEXIS 119807, at *15.

---

[2] In contrast, the Seventh Circuit has held that the question of whether a debt collector violates § 1692g is an issue of fact for the jury to decide. *See Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 503 (7th Cir. 1999). *But see Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 636 (7th Cir. 2012) (holding that, while the confusing nature of a collection letter is generally considered a question of fact, "a plaintiff fails to state a claim and dismissal is appropriate as a matter of law when it is apparent from a reading of the letter that not even a significant fraction of the population would be misled by it.") (internal citations omitted)).

Even though *Rachoza* and *Kalebaugh* both involved summary judgment rulings, the analysis in each case focused solely on the contents of the collection letter without regard to any extrinsic evidence. *See Rachoza*, 1998 U.S. Dist. LEXIS 5018, at *14 (stating that "[t]he test is whether the March 4 letter provided for contradictory deadlines which overshadowed the notice of the statutory thirty-day validation period viewed from the perspective of the least sophisticated consumer."), *Kalebaugh*, 2014 U.S. Dist. LEXIS 119807, at *29 (finding a § 1692g violation as a matter of law because the defendant failed to include the amount of the debt in the letter as required by the statute). The court therefore concludes that the motion to dismiss stage is appropriate to address the contradiction/overshadowing issue.

**2. Section 1692g Contradiction/Overshadowing**

Having so decided, the court must now determine whether defendant's collection letter, and, more specifically, the sentence that informed plaintiff that defendant could file suit within the thirty-day validation period, contradicted and/or overshadowed plaintiff's § 1692g validation rights.

The FDCPA requires a debt collector, within five days of its initial communication with a consumer, to send the consumer a written notice containing the following:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification of judgment will be mailed to the consumer by the debt collector; and

> (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. §1692g(a).

Many circuits, in determining whether a validation rights notice is adequate, have adopted the "least sophisticated consumer" standard. *See, e.g., LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010); *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993); *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1028 (6th Cir. 1992); *Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991); *Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 778 (9th Cir. 1982); *see also Kvassay v. Hasty*, 236 F. Supp. 2d 1240, 1267 (D. Kan. 2002) (noting that "when analyzing notices or communications under the FDCPA, the court should operate from the perspective of the least sophisticated consumer.") (internal citations omitted).[3] Under this objective standard, "the courts consider 'how the least sophisticated consumer—one not having the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer—understands the notice he or she receives'" *Kalebaugh*, 2014 U.S. Dist. LEXIS 119807, at *9-10 (quoting *Ferree v. Marianos*, 1997 U.S. App. LEXIS 30361, at *5 (10th Cir. Nov. 3, 1997)). "The hypothetical least sophisticated consumer, however, 'can be presumed to possess a rudimentary amount of information about the world and a willingness to read a

---

[3] The standard is also referred to, in some circuits, as the "unsophisticated consumer test." *See, e.g., Veach v. Sheeks*, 316 F.3d 690, 692-93 (7th Cir. 2003) ("When reviewing documents for compliance with the FDCPA, . . . [the Seventh Circuit] use[s] the 'unsophisticated debtor' standard."); *Duffy v. Landberg*, 215 F.3d 871, 874-75 (8th Cir. 2000) (the unsophisticated consumer standard "protects the uninformed or naïve consumer, yet also contains an objective element of reasonableness to protect debt collectors from liability for peculiar interpretations of collections letters."); *see also Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 n.2 (9th Cir. 2011) (noting that the unsophisticated consumer standard "appears to differ from the majority test only in semantics"); *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997) ("The most widely accepted tests for determining whether a collection letter contains false, deceptive, or misleading representations are objective standards based on the concepts of the 'least sophisticated consumer' or the 'unsophisticated consumer.'").

collection notice with some care.'" *Rachoza*, 1998 U.S. Dist. LEXIS 5018, at *10-11 (citing *Ferree*, 1997 U.S. App. LEXIS 30361, at *5).

Although the Tenth Circuit has yet to adopt this standard, there is at least *some* indication that it would be inclined to do so. In *Ferree v. Marianos*, the Circuit noted that "[f]or claims under the FDCPA, other circuit courts of appeal have applied an objective standard, 'measured by how the 'least sophisticated consumer' would interpret the notice received from the debt collector.'" 1997 U.S. App. LEXIS 30361, at *5 (citing *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996)). Based on this decision, district courts in this circuit have likewise applied the standard to FDCPA claims. *See Rachoza*, 1998 U.S. Dist. LEXIS 5018, at *10; *Kalebaugh*, 2014 U.S. Dist. LEXIS 119807, at *13. This court therefore applies the least sophisticated consumer standard.

There is no dispute that defendant's collection letter satisfies the five notice requirements set forth in § 1692g. Plaintiff's allegation, rather, is that the last sentence of the letter, "[w]e may proceed with suit against you without waiting the 30 days if so requested by our client," contradicts and/or overshadows these notice requirements.

> Under §1692g(b),
>
> If the consumer notifies the debt collector in writing within the thirty-day period . . . that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this title may continue during the 30-day period . . . unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. *Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor*.

7

15 U.S.C. § 1692g(b) (emphasis added).  Plaintiff argues that the language used in defendant's notice letter has "been classic overshadowing for decades" and urges this court to adopt the standard set forth by the Seventh Circuit in *Bartlett v. Heibl*, 128 F.3d 497 (7th Cir. 1997).

In *Bartlett*, the defendant debt collector sent the plaintiff consumer a validation letter which stated, among other things, that if he "wish[ed] to resolve this matter before legal action is commenced, [he] must do one of two things *within one week of the date of this letter*: pay $316 toward the satisfaction of the debt, or get in touch with Micard (the creditor) and make suitable arrangements for payment."  128 F.3d at 499 (emphasis added).  The Seventh Circuit determined that inclusion of the one-week time frame was indeed confusing and overshadowed the required notice.  *Id*. at 501.  The court noted:

> On the one hand, Heibl's letter tells the debtor that if he doesn't pay within a week he's going to be sued.  On the other hand, it tells him that he can contest the debt within thirty days.  This leaves up in the air what happens if he is sued on the eighth day, say, and disputes the debt on the tenth day.  He might well wonder what good it would do him to dispute the debt if he can't stave off a lawsuit.  The net effect of the juxtaposition of the one-week and thirty-day crucial periods is to turn the required disclosure into legal gibberish.  That's as bad as an outright contradiction.

*Id*.  The court offered an "improved" version of the debt collector's letter to be used as a guide in the future.  *Id*. at 501-02.

It is understandable that the plaintiff in *Bartlett* could become confused based on the contents of his letter: the same letter told him that he had both thirty days and one week to sort out the debt.  Indeed, plaintiff is correct that courts have consistently found this type of conflicting information to be a violation of § 1692g.  In a District of Kansas case somewhat similar to the case at hand, the plaintiff received a letter from the debt collector defendant that stated, in addition to the required § 1692g notice,

8

> If we do not hear from you and the sum of $11,683.66 is not paid to our office *within 10 days*, we will take whatever legal steps are necessary to protect our client's interest without further notice to you, which may include placing the claim with an attorney in your locale for suit. Additionally, we may proceed with suit without waiting 30 days if so requested by our client.

*Rachoza*, 1998 U.S. Dist. LEXIS 5018, at *3 (emphasis added). Because the defendant's letter, in addition to notifying the plaintiff of his thirty-day validation period, also stated that he only had ten days to pay the outstanding balance, the court held that the defendant violated § 1692g as a matter of law. *Id*. at *15.

Courts outside of this circuit have reached similar conclusions. In *Zemeckis v. Global Credit & Collection Corporation*, the defendant debt collector sent the plaintiff consumer a letter that included, in addition to the required thirty-day validation notice, phrases such as "take action now," and "call today." 679 F.3d 632, 634-36 (7th Cir. 2012). In its decision, the Seventh Circuit compared this factual situation to that contained in *Bartlett* and distinguished the two, finding that the "urgings" in *Zemeckis* were merely puffery, "rhetoric designed to create a mood rather than to convey concrete information or misinformation," and did not impose a deadline that contradicted the plaintiff's right to a thirty-day validation period. *Id*. at 636.[4]

A court in the Northern District of Illinois recently held that a defendant debt collector did not violate § 1692g when it instructed the plaintiff, in its collection letter, to contact another party regarding any credit report disputes. *Friedman v. Leading Edge Recovery Solutions, LLC*, 2014 U.S. Dist. LEXIS 58694 (N.D. Ill. Apr. 28, 2014). In so holding, the court noted that "[o]vershadowing generally occurs when the debt collector indicates that the time for disputing

---

[4] Although merely dicta, the court went on to say that the defendant "did not go so far as to mention that it had the right, as do all creditors, to initiate suit during the validation period. That information, if included, would have rendered the letter even more threatening *and would still not have risen to a violation of Section 1692g(b)*." *Zemeckis*, 679 F.3d at 636-37 (emphasis added).

9

the debt has passed or when the statements by the debt collector misrepresent or cloud the amount of time remaining to dispute the debt." *Id*. at *7 (internal citations omitted).

In *McCormick v. Wells Fargo Bank*, the defendant debt collector sent the plaintiff debtor a letter with nearly identical language to that sent in the case now before this court. 640 F. Supp. 2d 795 (S.D.W.Va. 2009). Like plaintiff's letter, the letter in *McCormick* concluded with the following sentence: "[p]lease be advised that during the thirty (30) day period, this firm will not delay or cease with its collection of the debt." *Id*. at 797. In granting the defendant's motion to dismiss, the court held that a violation is typically found where the letter contains some type of contradiction between the thirty-day validation period and "the call for some type of 'immediate' or earlier payment . . . . ," *not* where the letter simply fails to alert the consumer that the collection process will temporarily stop if the consumer exercises his § 1692g(a) right to verification. *Id*. at 799-800.

Here, defendant's letter is more akin to those found in *Zemeckis*, *Friedman*, and *McCormick* rather than those found in *Bartlett* and *Rachoza*. Plaintiff was advised that he had thirty days in which to contest the validity of the debt and to request the name and address of the original creditor if different from the current creditor. Dkt. 1-1, at 9. Unlike the situations in *Bartlett* and *Rachoza*, plaintiff was never told that he was required to pay the debt within a specified time that was less than the thirty days. Defendant did not misrepresent the amount of time remaining that plaintiff had to dispute the debt, nor did it indicate that the time for disputing the debt had passed. The collection letter did not include any threats that plaintiff pay the debt within a shortened period of time "or else." Rather, defendant's letter merely encouraged plaintiff to pay his debt by informing him of the possible consequences of failing to do so.

It is important to note that the "validation period . . . is *not* a grace period: a debt collector is 'perfectly free' to demand payment and pursue collection efforts, including an appropriate lawsuit against the debtor, within the validation period." *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 416 (7th Cir. 2005) (citing *Bartlett*, 128 F.3d at 500-01) (emphasis added). As prescribed by the statute, "during the validation period, the debtor's right to dispute coexists with the debt collector's right to collect." *Id.* Here, defendant was simply advising plaintiff of its options as a debt collector; options specifically bestowed upon defendant by the language of the FDCPA itself. When all of these factors are considered together, it becomes apparent that defendant's collection letter did not violate § 1692g because it did not contradict or overshadow plaintiff's validation rights. As such, defendant's motion to dismiss is granted as to plaintiff's FDCPA claim (Count I).

**B.    KCPA Violation**

Plaintiff's second claim asserts a violation of the KCPA. The KCPA prohibits deceptive or unconscionable acts and practices in connection with a "consumer transaction." Under the Act, a consumer transaction is defined as "a sale, lease, assignment or other disposition for value of property or services within this state . . . to a consumer; or a solicitation by a supplier with respect to any of these dispositions." K.S.A. § 50-624(c).

The Kansas Supreme Court has previously held that an independent debt collection agency may be a "supplier" for purposes of the KCPA only under certain conditions:

(1) The debt sought to be enforced came into being as a result of a consumer transaction;

(2) The parties to the *original* consumer transaction were a "supplier" and a "consumer" as defined in the act; and

> (3) The conduct complained of, either deceptive or unconscionable, occurred during the collection of, or an attempt to collect, a debt which arose from the consumer transaction and was owed by the consumer to the original supplier.

*State ex rel. Miller v. Midwest Serv. Bureau of Topeka, Inc.*, 229 Kan. 322, 623 P.2d 1343, 1349 (Kan. 1981) (emphasis added). Our court has applied the *Miller* test to a law firm engaged in collection activities and found that the debt collector met the definition of a "supplier." *See Rachoza*, 1998 U.S. Dist. LEXIS 5018, at *18. Therefore, this court looks to the *Miller* test to determine if defendant is a "supplier" under the KCPA and, as such, is subject to the requirements of the act.

Defendant concedes, for purposes of this motion, that the first element of *Miller* is satisfied – that the debt sought to be enforced came into being as a result of a consumer transaction. Dkt. 7, at 16. However, defendant contests the second element of the test – that the parties to the *original* consumer transaction were a "supplier" and a "consumer," as those terms are defined in the Act. More specifically, defendant argues that the alleged supplier, Discover Bank, *cannot* be deemed as such under the KCPA's own definition of that term.

The KCPA defines "supplier" as

> a manufacturer, distributor, dealer, seller, lessor, assignor, or other person who, in the ordinary course of business, solicits, engages in or enforces consumer transactions, whether or not dealing directly with the consumer. *Supplier does not include any bank, trust company or lending institution which is subject to state or federal regulation with regard to disposition of repossessed collateral by such bank, trust company or lending institution.*

K.S.A. § 50-624(l) (emphasis added). At least one court in this district has construed the KCPA to exclude banks and lending institutions entirely from the definition of "supplier" if they are subject to state and federal regulations. *See Kastner v. Intrust Bank*, 2011 U.S. Dist. LEXIS 17364, at *7 n.3 (D. Kan. Feb. 22, 2011) ("K.S.A. § 50-624(l) appears to exclude banks and lending institutions that are subject to state and federal regulation from the definition of

'supplier' and the court assumes that defendant Intrust Bank satisfies this exception."); *see also Briscoe v. Cohen*, 2014 U.S. Dist. LEXIS 139786, at *30-31 (D. Kan. Oct. 1, 2014) (holding that a bank was not a supplier under the KCPA "if it is subject to state or federal regulation.")[5]

Plaintiff disagrees with this interpretation of the definition of "supplier" and instead argues that the KCPA only excludes banks, trust companies, and lending institutions when the issue at hand is the "disposition of repossessed collateral." Ergo, since the issue before the court deals only with the alleged outstanding balance on a credit card and *not* the disposition of repossessed collateral, Discover Bank is a supplier under the KCPA. The court disagrees. Plaintiff offers absolutely no support, statutory or otherwise, for this distinction. Nor did the court find, during its own review of the law, any such support for this interpretation. Furthermore, the court cannot extrapolate this meaning from the plain language of the statute. The court therefore concludes that Discover Bank is *not* a supplier under the KCPA if it is subject to state or federal regulation.

While the court can certainly infer, based on its own general knowledge, that Discover Bank is, in fact, subject to state and/or federal regulation, the record currently does not include any evidence to suggest one way or the other as to Discover Bank's regulatory status. If it did, the court may be inclined to convert this issue to summary judgment, pursuant to Federal Rule of Civil Procedure 12(d). However, absent any such evidence, the court's hands are tied and, as

---

[5] Although presented with an affidavit from the Executive Vice President of the original bank stating that the bank was a "bank, trust company, or lending institution which is subject to state or federal regulation . . . .," the *Briscoe* court declined to convert the defendant's motion to dismiss into a summary judgment motion without giving the plaintiff an opportunity to present material. *Briscoe*, 2014 U.S. Dist. LEXIS 139786, at *32-33. It therefore ordered that all issues in the case be stayed so that the parties might conduct limited discovery on whether the bank was governed by state or federal regulation and subsequently submit a motion for summary judgment. *Id.*

such, it has no choice but to deny defendant's motion to dismiss plaintiff's KCPA claim (Count II).[6]

**IT IS THEREFORE ORDERED** this 5th day of January, 2015, that defendant's Motion to Dismiss (Dkt. 6) is here by granted in part and denied in part.

    s/J. Thomas Marten
J. THOMAS MARTEN,
CHIEF JUDGE

---

[6] As noted above, the court is aware that, in Judge Crabtree's *Briscoe* decision, he stayed his decision on defendant's motion to dismiss so that the parties could conduct limited discovery as to whether the original supplier, a bank, was subject to state or federal regulation. The court finds such procedure to be unnecessary in the case at hand.